USDC SCAN INDEX SHEET

















LMH    4/14/99    8:49
3:98-CV-01537   BRODY V. DAOU SYSTEMS INC
*30*
*P/A.*

ORIGINAL

1  CHARLES H. DICK, State Bar No. 73981
   MICHAEL P. McCLOSKEY, State Bar No. 106051
2  ROBERT M. HARKINS, State Bar No. 179525
   SHANNON M. DAILEY, State Bar No. 185634
3  **BAKER & McKENZIE**
   101 West Broadway, Twelfth Floor
4  San Diego, CA 92101
   Telephone: (619) 236-1441
5
   Attorneys for the Defendants
6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  In re DAOU SYSTEMS, INC., SECURITIES )  **CASE NO. Master File No. 98CV1537-**
    LITIGATION                           )  **TW(CGA)**
11                                       )
    _____  )  **CLASS ACTION**
12                                       )
    This Document Relates to:            )  **MEMORANDUM OF POINTS AND**
13                                       )  **AUTHORITIES IN SUPPORT OF**
       ALL ACTIONS.                      )  **MOTION TO DISMISS CONSOLIDATED**
14                                       )  **AMENDED CLASS ACTION AMENDED**
                                         )  **COMPLAINT**
15                                       )
                                         )  **DATE:       July 12, 1999**
16                                       )  **TIME:       10:30 a.m.**
                                         )  **DEPT:       Court room 7**
17                                       )  **JUDGE:      Hon. Thomas Whelan,**
                                         )  **            District Judge**
18                                       )
                                         )  **NO ORAL ARGUMENT REQUIRED**
19                                       )  **PURSUANT TO LOCAL RULE 7.1.D.1**
                                         )
20

21

22

23

24

25

26

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

1

**TABLE OF CONTENTS**

2

**Page(s)**

3  I. INTRODUCTION ......................................................................................................... 1

4  BACKGROUND............................................................................................................. 2

5  III. ARGUMENT ............................................................................................................ 4

6      A. The Plaintiffs Lack Standing To Prosecute Their '33 Act Claims....................... 4

7      B. What Are The Applicable Pleading Standards? ................................................... 4

8          1. Standards For Pleading A Claim.................................................................. 5

9          2. Standards For Pleading A Section 10(b) Claim. .......................................... 6

10          3. Standards For Pleading Fraud. .................................................................... 6

11          4. Standards For Pleading A Section 11 Claim................................................ 7

12      C. Why The Amended Complaint Is Legally Insufficient. ....................................... 7

13          1. The Pleading Fails To Show That The Defendants Did Anything Wrong. .............. 7

14          2. The Amended Complaint Fails To Establish The Materiality Of Any
               Misrepresentation. ..................................................................................... 12

15          3. There Is No Factual Basis To Support Scienter. ......................................... 12

16

17          4. Daou's Use Of The POC Method Is Not Alleged to Have Caused The Loss......... 15

18          5. There Are No Other Material Misstatements Or Omissions................................. 16

        6. There Is No Control Person Or Seller Liability. ......................................... 19

19  IV. CONCLUSION........................................................................................................... 20

20

21

22

23

24

25

26

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

504868v1

# TABLE OF AUTHORITIES

Page

## Cases

*Allison v. Brooktree,*
   999 F. Supp. 1342 (S.D. Cal. 1998) .................................................................................. 13

*Argyopoulos v. Mednet,*
   1997 U.S. Dist. LEXIS 10497 (C.D. Cal. Apr. 18, 1997) .................................................. 7, 17

*Binder v. Gillespie,*
   1999 U.S. App. LEXIS 5701 (9th Cir. Mar. 30, 1999) ........................................................ 13, 14

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ................................................................................................ 3

*Cooperman v. Individual, Inc.,*
   1999 U.S. App. LEXIS 4838 (1st Cir. Mar. 22, 1999) ........................................................ 17

*Daley's Dump Truck Serv., Inc. v.*
   *Kiewit Pac. Co.,* 759 F.Supp. 1498 (W.D. Wash. 1991) ................................................... 4

*Fisher v. Acuson Corp.,*
   1995 U.S. Dist. LEXIS 19968, *3 (N.D. Cal. Apr. 26, 1995) ............................................. 11

*Gould v. Harris,*
   929 F.Supp. 353 (C.D. Cal. 1996) ...................................................................................... 4

*Gustafson v. Alloyd Co.,*
   513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) ........................................................ 4

*Head v. NetManage, Inc.,*
   1998 U.S. Dist. LEXIS 20433, Fed. Sec. L. Rep. (CCH) ¶ 90,412 (N.D. Cal. Dec. 30, 1998) ....... 12

*In Re Apple Computer Sec. Litig.,*
   886 F.2d 1009 (9th Cir. 1989), *cert. denied,* 496 U.S. 943 (1990) .................................. 12

*In re Boeing Sec. Litig.,*
   1998 U.S. Dist. LEXIS 14803 (W.D. Wash. Sept. 8, 1998) ............................................... 12

*In re Caere Corp. Sec. Litig.,*
   837 F. Supp. 1054 (N.D. Cal. 1993) ................................................................................... 15

*In re Cirrus Logic Sec. Litig.,*
   946 F. Supp. 1446 (N.D. Cal. 1996) ................................................................................... 13

*In re Glenfed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) ............................................................................................... 6, 9

*In re Oak Tech. Sec. Litig.,*
   1997 U.S. Dist. LEXIS 18503 (N.D. Cal. 1997) ................................................................. 8, 9, 11

Baker & McKenzie
101 West Broadway
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

503689v1

## TABLE OF AUTHORITIES

Page

*In re Silicon Graphics, Inc. Sec. Litig.,*
    970 F. Supp. 746 (N.D. Cal. 1997), *appeal pending*, No. 97-16240 ........................................ 7, 12

*In re Stac Elec. Sec. Litig.,*
    89 F.3d 1399 n.2 (9th Cir. 1996)................................................................................................. 7, 15

*In re Stratosphere Corp. Sec. Litig.,*
    1 F. Supp. 2d 1096 (D. Nev. 1998) ............................................................................................ 7, 16

*In re Syntex Corp. Sec. Litig.,*
    95 F.3d 922 n.9 (9th Cir. 1996)................................................................................................... 5, 17

*In Re Verifone Sec. Litig.,*
    784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993).................................. 15, 17

*In re WRT Securities Litigation,*
    1997 U.S. Dist. LEXIS 14009 (S.D.N.Y. Sept. 15, 1997) ............................................................ 17

*May v. Borick,*
    1997 WL 314166 (C.D. Cal. Mar. 3, 1997) ...................................................................................... 5

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989)............................................................................................................ 18

*Paracor Finance v. Gen. Elec. Capitol Corp.,*
    96 F.3d 1151 (9th Cir. 1996)............................................................................................................. 6

*Pinter v. Dahl,*
    486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) ............................................................... 18

*Polk v. Fritz,*
    No. C96-2712 MHP (N.D. Cal. Mar. 5, 1998)............................................................................... 6, 9

*Powers v. Eichen,*
    1997 U.S. Dist. LEXIS 11074, Fed. Sec. L. Rep. (CCH) ¶ 99, 483 (S.D. Cal. March 13, 1997).... 12

*Raab v. General Physics Corp.,*
    4 F.3d 286 (4th Cir. 1993)............................................................................................................... 17

*Ravens v. Iftikar,*
    174 F.R.D. 651 (N.D. Cal. 1997).................................................................................................... 10

*Rogal v. Costello,*
    [1992-1993 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,245, at ¶ 95,093 (N.D. Cal. Oct. 8,
    1992) ................................................................................................................................................ 14

*Ronconi v. Larkin,*
    1998 U.S. Dist. LEXIS 6364 (N.D. Cal. 1998)................................................................................ 3

Securities Act of 1933 ..................................................................................................... passim

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

# TABLE OF AUTHORITIES

Page

*Shaw v. Digital Equip. Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ..................................................... 17, 18

*Stack v. Lobo,*
    903 F. Supp. 1361 (N.D. Cal. 1995) ............................................... 4

*Strassman v. Fresh Choice, Inc.,*
    1995 U.S. Dist. LEXIS 19343 (N.D. Cal. Dec. 7, 1995) ..................... 17

*Wenger v. Lumisys, Inc.,*
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................................ passim

*Zeid v. Kimberly,*
    973 F. Supp. 910 (N.D. Cal. 1997) ............................................. 5, 9

**Statutes**

15 U.S.C. § 77k(a) ............................................................................ 7

15 U.S.C. § 78 ..................................................................... 6, 7, 13

1934 Securities Exchange Act ..................................................... passim

Section 10 ................................................................................. passim

Securities Act of 1933 ......................................................................... 4

**Rules**

Federal Rule of Civil Procedure 8 ..................................................... 4, 5

Federal Rule of Civil Procedure 9(b) .................................................... 6

SEC Rule 10b-5 ......................................................................... 6, 17

Baker & McKenzie
101 West Broadway
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

# I. INTRODUCTION

The Amended Complaint is a 67-page "briar patch," alleging a potpourri of acts that supposedly are bad, a decline in the price of a Company's stock and a fallacious conclusion that there is a cause and effect relationship between the two. Despite its bulk and superficial appearance of detail, the pleading is nothing more than sophistry. Whether considered singularly or collectively, the allegations in the Amended Complaint do not pass the "So What?" test.

From a reading of the Amended Complaint, one can glean that the Plaintiffs have sued for violation of Sections 11, 12(2), and 15 of the 1933 Securities Act and Sections 10(b), and 20 of the 1934 Securities Exchange Act. We know the class period begins with DAOU's initial public offering of securities on February 13, 1997, and it ends on October 28, 1998 when DAOU reported its financial results for July, August and September. However, the balance of the Amended Complaint fails to state with the requisite specificity *what* the Plaintiffs contend the Defendants did that is actionable or *how* the alleged wrongful acts caused any damage. Instead, the Plaintiffs seemingly hope a reader will take the easy way out and assume that there must be something meritorious somewhere in "all that verbiage."

The wrongdoing alleged in the Amended Complaint boils down to two primary events. *First*, the Plaintiffs allege that the Defendants published a material misrepresentation and defrauded investors when DAOU said in its Prospectus that the Company used the "Percentage of Completion" method to recognize revenue in its financial statements. (See Amended Complaint, ¶¶ 4, 29, and 42.) *Second*, the Plaintiffs maintain that the Defendants made material misrepresentations to analysts and in disclosure documents or press releases reporting quarterly financial results. (See Amended Complaint, ¶¶ 31-32, 38, 40, 42, 45-46, 52-53, 57-58, 60, 62-63, 67-69, 82.)

These are five reasons the Amended Complaint should be dismissed:

- The Plaintiffs lack standing to prosecute their claims under the 1933 Securities Act.

- The pleading fails to specify *how* and *why* any of the Defendants' statements were misstatements, in fact.

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

- The pleading fails to specify *how* and *why* any misstatements were material, in fact.

- The pleading fails to allege loss causation, because the decline in DAOU's stock price was caused by disclosures that are totally unrelated to any of the supposedly material misrepresentations.

- The pleading is a model of confusing prolixity that fails to constitute a plain statement of the Plaintiffs' claims.

## II. BACKGROUND

Georges and Daniel Daou created DAOU Systems in 1987 to provide "information management" services to hospitals and other healthcare organizations. The Company they formed is in the business of designing, implementing, supporting and managing complex custom computer network systems. When a client hires DAOU, the Company will design a tailor-made computer network, purchase the necessary equipment, test the network before installation to ensure it works properly, install the equipment at the client's facility and conduct on-site training of the client's employees. In 1996, after a decade of having established itself as a respected network service provider in the healthcare community -- with more than 350 customers at various sites across the country and almost $20 million in revenues -- the Company elected to finance future growth by becoming a public company. DAOU held an initial public offering of its stock on February 13, 1997.

Following the public offering, DAOU continued its successful trend within its industry. It gained an increased number of service contracts, and it was well-received by the investment community; the market value of the Company increased from $9 to more than $20 per share, and in keeping with its original plans, DAOU held a secondary offering of stock on August 15, 1997.

Because DAOU's business consisted almost wholly of long-term contracts whose completion occurred in stages, generally accepted accounting principles (GAAP) required that the Company recognize revenue based on a method known as "percentage of completion," or POC. Under that method, the Company recognized revenue based on how much labor had been

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

2

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1   done on a contract, as a percentage of the total labor the Company estimated would be needed
2   to complete the project. This resulted in properly reportable revenue that would not necessarily
3   correlate to customer payment schedules set up in a given contract, since those schedules differed
4   from customer to customer and did not really represent what DAOU had actually "earned" at any
5   given point in time. In every financial statement that it ever disseminated to the public, DAOU
6   said that it used the POC method of revenue recognition. **It still uses that method today with**
7   **the blessing of its auditors, Ernst & Young, who have opined that DAOU's use of the POC**
8   **method is consistent with GAAP.** (See IPO Prospectus, Feb. 13, 1997, attached as Exhibit 1
9   to the Notice of Lodgment.[1])

10      In July of 1998 the Company posted its financial results for the second quarter of 1998;
11  as per its regular practice, DAOU held a conference call with analysts to discuss the past quarter
12  and what the Company anticipated for the future. During that conference call there was a
13  miscommunication regarding the allocation of expenses associated with DAOU's recent
14  corporate mergers and the impact of those costs on the Company's earnings. When DAOU later
15  filed its Form 10-Q with the SEC on August 13, 1998, the merger expenses reported were the
16  same amount, but allocated differently than analysts believed they had been told two weeks prior.
17  The analysts responded negatively to the disparity, and DAOU's stock price dropped. The
18  following quarter produced a loss, due principally to delays in signing new projects totaling over
19  $40 million. This, combined with the negative reports from analysts in August, kept DAOU's
20  stock price from returning to its previous levels. Smelling blood in the water, several disgruntled
21  shareholders immediately filed suit against DAOU. The complaints were consolidated into what
22  is now the Amended Class Action Complaint presently before the Court.

---

[1] The Court may consider documents to which the Plaintiffs refer in the Complaint, but which are not attached to the Complaint. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The Court may also consider items subject to judicial notice, such as a Prospectus and Registration Statement and other public disclosure documents filed with the Securities and Exchange Commission. *See Ronconi v. Larkin*, 1998 U.S. Dist. LEXIS 6364, at *2 (N.D. Cal. 1998).

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

3

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

### III. ARGUMENT

#### A. The Plaintiffs Lack Standing To Prosecute Their '33 Act Claims.

Liability under Section 11 and Section 12(2) of the 1933 Securities Act only applies to an offering of securities, not to after-market or secondary transactions. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 578, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (Section 12(2)); *Stack v. Lobo*, 903 F. Supp. 1361, 1375-76 (N.D. Cal. 1995)(Section 11).  While the complaint alleges that some class members bought shares during the class period, there is no allegation that any of the named Plaintiffs purchased shares during DAOU's February 1997 stock offering. As a result, the Plaintiffs lack standing to assert violations of Sections 11 and 12(2). *See Gustafson,* 513 U.S. at 578 (dismissal of Section 12(2) claim when plaintiffs did not buy stock personally during the IPO); *Gould v. Harris*, 929 F.Supp. 353, 358-59 (C.D. Cal. 1996) (same for Section 11); *Stack,* 903 F.Supp. at 1375-76 (1995) (same for Section 12(2)).

Allegations that unnamed class members bought stock during the IPO are insufficient to confer standing on the Plaintiffs. *See Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.,* 759 F.Supp. 1498, 1501 (W.D. Wash. 1991) ("The only plaintiffs whose claims may be considered in deciding whether plaintiffs have standing to bring this lawsuit are the named plaintiffs"), *aff'd sub nom. Imagineering, Inc. v. Kiewitt Pac. Co.,* 976 F.2d 1303 (9th Cir. 1992).  Thus, the fact that no named plaintiff bought shares during the IPO is fatal to their Section 11 and 12(2) claims. Since Plaintiffs cannot prosecute their primary claims under the 1933 Securities Act, their claims for Section 15 control person liability also fail.

#### B. What Are The Applicable Pleading Standards?

##### 1. Standards For Pleading A Claim.

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Rule demands that "Each averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. Proc. 8(e)(1). When a plaintiff is represented by competent counsel, failure to follow these strictures mandates

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

4

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

503689v1

dismissal of the complaint. *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1241-43 (N.D. Cal. 1998).

The court in *Wenger* described its rationale for dismissing a complaint under Rule 8 in language that could have been written about the Amended Complaint in this lawsuit:

> Determining whether 'the pleader is entitled to relief' requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations. The Complaint repeats many allegations three or four times, often giving them a slightly different flourish at each turn. In violation of the Reform Act's requirement that a complaint must specify the reasons why each statement is alleged to have been misleading, the Complaint lumps all alleged misrepresentations together in one unwieldy [segment] and then follows that catalog with a three-page laundry list of reasons why all the statements were allegedly false when made. . . . The Complaint does not indicate which among the [several] pages of statements are alleged to be false, does not follow each allegedly false statement with factors showing it was false, and does not provide any inkling that any statement was false when made except to say that the 'true facts' . . . were 'available to the defendants . . . during the Class Period.' Plaintiff merely throws the statements and the alleged true facts together in an undifferentiated clump and apparently expects the reader to sort out and pair each statement with a supposedly relevant 'true fact.'

*Id.* at 1243. The Amended Complaint should clarify rather than obfuscate allegations of wrongdoing, *see May v. Borick*, 1997 WL 314166, *8 (C.D. Cal. Mar. 3, 1997), and a defendant should not be required "to sort out the alleged misrepresentations and match them with corresponding 'adverse facts.'" *Zeid v. Kimberly*, 973 F. Supp. 910, 918 (N.D. Cal. 1997). Instead, when labyrinthian pleading makes it almost impossible to determine the sufficiency of a plaintiff's explanation as to why alleged misstatements were false or misleading, the complaint should be dismissed. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 932-33 n.9 (9th Cir. 1996).



The Amended Complaint in this case is a classic example of the type pleading barred by Rule 8. While the 67-page Amended Complaint resembles a telephone book, it is impossible to decipher the specific misstatements (as distinguished from true statements or benign "puffery"),

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1   let alone discern *why* each statement is false or caused harm.  Like the complaint in *Wenger*, the

2   allegations are lumped together up front, then reiterated several times in cookie-cutter fashion

3   without regard to *how* the accounting measures employed by DAOU actually abused the POC

4   method.  Nor is there any short, plain statement how DAOU's accounting practices produced any

5   *material* misstatement of its financial position so as to create liability under the securities laws.

6   Moreover, the same laundry list of allegations why statements are false appears multiple times,

7   leaving the reader to determine if there is any connection or difference between those statements

8   and the "true facts."  This prolix, confusing pleading should be dismissed.

### 2.  Standards For Pleading A Section 10(b) Claim.



To state a claim under Section 10(b) of the 1934 Securities Exchange Act (15

U.S.C. § 78j) or SEC Rule 10b-5, the Plaintiffs must allege specific facts

demonstrating (1) a misrepresentation or omission; (2) of material fact; (3)

scienter; (4) reliance; and (5) resulting damages. *See Paracor Finance v. Gen. Elec. Capitol

Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996). If one of these elements is absent, the claim fails. *See

id.*

The 1995 Private Securities Litigation Reform Act (the "Reform Act") also requires that

every complaint pleaded on information and belief "state with particularity all facts on which that

belief is formed." 15 U.S.C. § 78u-4(b)(1).  Further, the Amended Complaint also must "state

with particularity facts giving rise to a ***strong inference*** that the Defendant acted with the

required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added).  A complaint failing to

comply with these requirements must be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

### 3.  Standards For Pleading Fraud.

A claim of fraud should be dismissed unless each element is alleged with the specificity

required by Federal Rule of Civil Procedure 9(b). *See In re Glenfed, Inc. Sec. Litig.*, 42 F.3d

1541, 1545 (9th Cir. 1994).  The Amended Complaint must detail each source of information that

supports the reason why a statement is a misstatement. *See, e.g., Polk v. Fritz*, No. C96-2712

MHP, at 19 (N.D. Cal. Mar. 5, 1998), *appeal pending*, No. 98-15558.  (holding that conclusory

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

6
POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1  statements do not satisfy the Reform Act's requirements of detailing "the reason or reasons why

2  each statement is misleading."), *citing* 15 U.S.C. §78u-4(b)(1)(B). The Plaintiffs cannot avoid

3  the specificity requirement of the Reform Act by alleging investigation of counsel. *See In re*

4  *Silicon Graphics, Inc. Sec. Litig.,* 970 F. Supp. 746, 763 (N.D. Cal. 1997), *appeal pending*, No.

5  97-16240.

6  4. <u>Standards For Pleading A Section 11 Claim.</u>

7  Under Section 11 of the 1933 Securities Act, the Amended Complaint must allege

8  facts that show the prospectus contained a misstatement of material fact. *See* 15

9  U.S.C. § 77k(a). Normally, Section 11 claims are based upon notions akin to strict

10  liability. However, when a Section 11 or 12(2) violation sounds in fraud (as it does here), the

11  allegations of the Amended Complaint must meet the specificity requirements for pleading a

12  fraud claim. *See In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1404-05 n.2 (9th Cir. 1996); *In re*

13  *Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1104 (D. Nev. 1998); *Argypoulos v. Mednet,*

14  1997 U.S. Dist. LEXIS 10497, at *17 (C.D. Cal. Apr. 18, 1997).

15  **C. Why The Amended Complaint Is Legally Insufficient.**

16  1. <u>The Pleading Fails To Show That The Defendants Did Anything Wrong.</u>

17  The singular statement in DAOU's Prospectuses that the Plaintiffs allege to be false and

18  misleading, is:

19  > Contract revenue for the development and implementation of
20  > network solutions is recognized on the percentage-of-completion
   > method with progress to completion measured by labor costs
21  > incurred to date compared to total estimated labor costs.. Provisions
   > for estimated losses on contracts, if any, are made during the period
22  > when the loss becomes probable and can be reasonably estimated.
   > Revenues recognized in excess of amounts billed and project costs
23  > are classified as contract work in progress.

24

25  (Amended Complaint, ¶¶ 4, 86.) The Plaintiffs admit that the POC method is authorized by

26  GAAP for use in recognizing revenue of long-term contracts (Amended Complaint, ¶ 92), and

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

7

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1  nowhere do they allege that DAOU should have used some other method of revenue recognition.[2]

2  Instead, while acknowledging the POC method may have been proper for DAOU to use, the

3  Plaintiffs allege in conclusory fashion that the Company abused the method by not really

4  recognizing revenue based on labor costs incurred.  (Amended Complaint, ¶¶ 5, 87.)  The

5  Plaintiffs assert that as a result, DAOU's statement that it used the POC method was a material

6  misrepresentation, and the revenue numbers DAOU reported on the basis of the POC method

7  also were misstated.

8       To state a claim for accounting fraud under the 1934 Securities Exchange Act properly,

9  the Plaintiffs must "plead facts sufficient to support a conclusion that Defendants prepared the

10  fraudulent financial statements. . . ." *In re Oak Tech. Sec. Litig.*, 1997 U.S. Dist. LEXIS 18503,

11  at *8 (N.D. Cal. 1997).  Further, the Plaintiffs "must identify the particular transactions

12  underlying [the] alleged accounting deficiencies." *Id.* (citations omitted.)

13       The problem is that the Amended Complaint does not explain with specificity

14  *how* or *why* the manner in which the Defendants made use of the POC method

15  was contrary to GAAP.  With specific respect to DAOU's Statement in the

16  Prospectus, nowhere do the Plaintiffs allege *why* that was a misrepresentation.  The truth is that

17  DAOU did recognize revenue based on a measurement of the labor costs incurred as compared

18  to an estimate of total labor costs, and that is what the Statement said.  Resorting to innuendo,

19  the Amended Complaint does little more than urge a reader to speculate whether DAOU's

20  calculations or estimates of labor cost may have been in error, but there still is no allegation of

21  any fact to support any conclusion that DAOU's financial statement in the Prospectus was false

22  in any way.  Invoking the theory of "fraud by hindsight," the Plaintiffs imply that since "abuses"

23  of the POC method allegedly occurred during the Class Period, those same actions must have

24  infected the financial statements in the Prospectus for the IPO.  On its face there is nothing

25

26  [2] This is an apparent concession that GAAP actually mandated use of the POC method in order for DAOU to report the
    Company's financial position most accurately and fairly.  The original complaints did allege that it was improper for

27  DAOU to use the POC method because the Company's long-term contracts supposedly failed to satisfy the preconditions

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

8

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

incorrect about DAOU's Statement in the Prospectus. There is no factual allegation of any misstatement of DAOU's financial condition in the Prospectus, and there can be no liability for that representation under the 1933 Act.

The Plaintiffs also have failed to allege *how* DAOU's financial statements reported during the class period were false. The Plaintiffs have failed to allege any particular transactions where revenue was improperly recognized, "including the names of the customers, the terms of specific transactions, when the transactions occurred, and the approximate amount of the fraudulent transactions." *In re Oak Tech. Sec. Litig.*, 1997 U.S. Dist. LEXIS 18503, at *8 (N.D. Cal. 1997); *Zeid v. Kimberly*, 973 F. Supp. 910, 923 (N.D. Cal. 1997). Conspicuous by its absence is any explanation *how* and *why* the way DAOU used the POC method somehow violated GAAP, and, more importantly, why that "abuse" made the Company's financial statements false and misleading. *Polk*, No. C 96-2712 MHP, at 4-5; *Glenfed*, 42 F.3d at 1549.

What do the Plaintiffs allege? They allege that DAOU booked 20% of a contract price as revenue immediately upon ordering equipment for a project, but the Plaintiffs do not allege *when* this practice was employed. (Amended Complaint, ¶¶ 5, 87.) They allege that after equipment was tested and shipped, DAOU would book 50%-60% of the contract price as revenue, and when training began, DAOU would book 90% of the contract as revenue; but the Plaintiffs do not allege *why* such a practice would be wrong. (Amended Complaint, ¶¶ 6, 88.) These allegations are legally insufficient and fail to give rise to a strong inference that what any of the Defendants did was wrongful. They do not state *how* these practices would violate the POC under GAAP. They do not show that reported percentages of completion differed from the amount of labor costs actually incurred by DAOU at the time. They do not advance any theory *why* Defendants committed any wrong by recognizing revenue consistent with the POC accounting method.

---

required by GAAP. When DAOU's' auditors reaffirmed the propriety of DAOU utilizing the POC method, the Plaintiffs changed their theory in the Amended Complaint.

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

9

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1    DAOU's business included planning custom computer systems, testing equipment,

2  installing them, and training client employees. Even if DAOU booked 20% of the contract price

3  as revenue on a single project after ordering the equipment, there is no fact alleged from which

4  one reasonably can conclude it was fraudulent for them to have done so. What fact in the

5  Amended Complaint leads to the conclusion that when equipment was shipped to a customer,

6  the actual labor cost DAOU had incurred for that transaction was less than the amount reported?

7  The Plaintiffs allege that DAOU would record 90% of the revenue, but they do not allege *why*

8  this was false.

9    Even if accepted as true, the Plaintiffs' allegations about the manner in which DAOU

10  employed the POC method "raise no more than a challenge to [DAOU's ] judgment." *In re*

11  *Boeing Sec. Litig.*, 1998 U.S. Dist. LEXIS 14803, at *51 (W.D. Wash. Sept. 8, 1998); *cf. Harris*

12  *v. IVAX Corp.,* 998 F. Supp. 1449, 1454-55 (S.D. Fla. 1998). This is insufficient to support a

13  claim of securities fraud violation. *See id.* GAAP permits (and indeed requires) that a company

14  use its sound judgment in implementing the POC method. For a complaint to allege a viable

15  securities claim, it must factually rule out the possibility that reported revenue reflected

16  permissible business judgments. Allegations that merely challenge the Defendants' judgment

17  cannot withstand a motion to dismiss. *See id.*

18    It is noteworthy that specific allegations in the Amended Complaint contradict generic

19  allegations about incidents supposedly involving improper recognition of revenue. This is a

20  point the Court should take into account when determining the sufficiency of the Amended

21  Complaint. *See, e.g., Ravens v. Iftikar,* 174 F.R.D. 651, 664 (N.D. Cal. 1997). After seeming to

22  allege that DAOU automatically recognized revenue in arbitrary stages (rather than based upon

23  actual labor costs incurred), the Plaintiffs backpedal and state that the Company did in fact

24  inquire of project engineers as to the amount of labor expended. (See Amended Complaint, ¶¶

25  8, 90.) Beyond this, the Amended Complaint admits that the amount of labor actually was

26  considered (although the Plaintiffs also claim in conclusory fashion that such consideration was

27  manipulated). (Amended Complaint, ¶¶ 9, 91.) While the Amended Complaint asks the reader

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

10

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1    to infer there was something nefarious about "pressing" the engineers for higher estimates of

2    completion, where are the facts alleged to support that inference?

3        A plain reading of the Amended Complaint demonstrates that the Plaintiffs allege no more

4    than that DAOU did in fact base its revenue recognition on the percentage of completion of its

5    projects, which is true. The Statement in the Prospectus is correct. Further, there is no fact

6    alleged to demonstrate that any revenue recognition practice employed by DAOU was improper,

7    in fact.

8    2. <u>The Amended Complaint Fails To Establish The Materiality Of Any Misrepresentation.</u>

9        The Plaintiffs have the additional burden of pleading how alleged misstatements are

10   *material.* This is true for both Section 11 and Section 10(b) claims. *See* 15 U.S.C. § 77k, 15

11   U.S.C. § 78j. "No matter how untrue a statement may be, *it is not actionable if it is not the type*

12   of statement that would significantly alter the total mix of information available to investors."

13   *Wenger v. Lumisys, Inc.,* 2 F. Supp. 2d 1231, 1245 (N.D. Cal. March 31, 1998), *citing Fisher v.*

14   *Acuson Corp.,* 1995 U.S. Dist. LEXIS 19968, 1995 WL 261439, *3 (N.D. Cal. Apr. 26, 1995).

15   The specific burden on the Plaintiffs is to allege *what amount* of revenue should have been

16   reported as compared with what DAOU did disclose. *See In re Oak Technology Sec. Litig.,* 1997

17   U.S. Dist. LEXIS 18503, at *24 (N.D. Cal. Aug. 1, 1997).

18       Even if one assumes for purposes of argument that the Defendants "abused" the POC

19   method in recognizing revenue, how was this material to investors? Nowhere does the Amended

20   Complaint allege with specific facts what revenue would have been reported if DAOU had used

21   the POC differently. Without this, it is impossible to conclude that an average investor or the

22   market received information substantially different from what they should have received -- a flaw

23   fatal to the Amended Complaint. Absent some quantification of the difference, one again must

24   ask "So What?"

25       The Plaintiffs apparently recognize this defect and attempt to use a smoke screen for the

26   purposes of skirting their pleading obligation. Instead of showing what a proper use of the POC

27   method would have yielded, they allege what DAOU might have posted as revenues if the

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

11

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

503689v1

Company had used an entirely different revenue recognition methodology -- recording revenue when a bill actually was sent to a client. (See Amended Complaint, ¶ 94.) Yet nothing in the Amended Complaint alleges that GAAP even would have allowed DAOU to use any method other than POC, and it begs the question to talk about an imaginary revenue picture the way the Plaintiffs do. Without a showing that proper employment of the POC method would have produced materially different results from what DAOU reported, there is no *material* misstatement. In such situation, the Defendants are entitled to dismissal under both the 1933 and the 1934 Acts.

### 3. There Is No Factual Basis To Support Scienter.

 A Section 10(b) claim also requires that the Amended Complaint allege facts that give rise to a strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(2); *Head v. NetManage, Inc.,* 1998 U.S. Dist. LEXIS 20433, Fed. Sec. L. Rep. (CCH) ¶ 90,412 (N.D. Cal. Dec. 30, 1998). Here, all the Plaintiffs allege is that DAOU improperly recognized revenue under the percentage of completion accounting method in violation of GAAP. However, "[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *In re Boeing Sec. Litig.,* 1998 U.S. Dist. LEXIS 14803, at *50 (W.D. Wash. Sept. 8, 1998). Instead, the Plaintiffs must allege specific facts that prove that the Defendants acted intentionally or recklessly to defraud investors. Merely alleging "motive and opportunity," as the Plaintiffs try here, is insufficient. *See In re Silicon Graphics, Inc. Securities Litigation,* 970 F. Supp. 746, 763 (N.D. Cal. 1997), *appeal pending,* No. 97-16240; *Powers v. Eichen,* 1997 U.S. Dist. LEXIS 11074, at *20, Fed. Sec. L. Rep. (CCH) ¶ 99, 483 (S.D. Cal. March 13, 1997). Moreover, even if pleading motive and opportunity could suffice, the Plaintiffs' allegations of insider trading are insufficient to show motive, because there is no allegation of fact that any Defendant sold a suspicious amount of shares at a suspicious time. *See In Re Apple Computer Sec. Litig.,* 886 F.2d 1009, 1117-18 (9th Cir. 1989), *cert. denied,* 496 U.S. 943 (1990).

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

12

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

Scienter requires more than a charge that accounting principles have been misapplied. *See Boeing,* at *50. The Amended Complaint is utterly devoid of any specific allegations supporting a strong inference that any of the Defendants intended to defraud investors when DAOU reported revenues under the POC method. The Amended Complaint does not contain a single fact tending to establish that any Defendant had reason to believe or know of any material inaccuracies. Indeed, the Company's auditors examined the reported revenues and opined that DAOU's financial statements complied with GAAP. This "clean" audit opinion is inconsistent with any suggestion that the Defendants knew DAOU's financial results for the class period were inaccurate, and contradicts any notion that the Plaintiffs have to establish a strong inference of scienter. *See In re Cirrus Logic Sec. Litig.,* 946 F. Supp. 1446, 1465 (N.D. Cal. 1996) (review and approval by outside auditor of accounting procedures alleged to be violative of GAAP "negated any inference of scienter"). In short, the Plaintiffs' allegations of accounting fraud are too generalized and conclusive to satisfy the heightened pleading standards of the Reform Act and should be dismissed.

Independently, the Section 10(b) claims against Defendant Moragne must be dismissed. The Reform Act requires, but the Plaintiffs have not alleged facts with the requisite specificity that show Mr. Moragne was connected with, knew of, was a part of, adopted, or acted upon any of the alleged misstatements made to analysts via conference calls. *See Allison v. Brooktree,* 999 F. Supp. 1342, 1350 (S.D. Cal. 1998)(finding the group-published doctrine inadequate to establish scienter in post Reform cases). Assertion that such statements are "group-published information" (see Amended Complaint, ¶ 22) is inadequate under the Reform Act's heightened pleading requirements. *See Allison,* at 1350. Thus, as an individually named defendant, Mr. Moragne must be dismissed from the 10b claims.

### 4. Daou's Use Of The POC Method Is Not Alleged to Have Caused The Loss.

It is incumbent upon the Plaintiffs to plead facts that establish the alleged misrepresentations and omissions caused the price of DAOU's stock to be inflated. *See* 15 U.S.C. §§ 78u-4(b)(2), 78u-4(b)(4). Loss causation customarily is alleged first by showing that

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1   today's disclosure of the truth resulted in the stock price declining.  The price decline then is

2   offered as evidence that the market price had been inflated as the result of previous falsehood.

3   *See, e.g., Binder v. Gillespie,* 1999 U.S. App. LEXIS 5701, at *14-*15 (9th Cir. Mar. 30, 1999).

4        In this case, the Amended Complaint alleges that when the truth was revealed concerning

5   DAOU's financial condition, the Company's stock price declined to a historical low on October

6   29, 1998 (See Amended Complaint, ¶11).   Therefore it is imperative that the Amended

7   Complaint allege how the prior inflation in the market price was caused by the Defendants'

8   misrepresentations.  *See Rogal v. Costello,* [1992-1993 Transfer Binder] Fed. Sec. L. Rep. (CCH)

9   ¶ 97,245, at ¶ 95,093 (N.D. Cal. Oct. 8, 1992) (granting motion to dismiss because plaintiffs

10  failed to establish loss causation); *Binder,* at *14-*15. Put another way, it is not enough to allege

11  that the stock price declined; the Plaintiffs must plead facts showing how any alleged

12  misstatement was the cause of inflation in the first place.  *See Rogal,* at ¶ 95, 093.

13       This the Amended Complaint fails to do.  The Plaintiffs' claim requires that the October

14  29 decline in market price be the result of disclosing the "truth," namely that DAOU was not

15  applying the POC method of accounting consistent with GAAP.  Had that truth been known

16  earlier, an efficient securities market would have valued DAOU's stock lower when Plaintiffs

17  purchased their shares.

18       The Plaintiffs' claim fails because an efficient securities market knew all along that

19  DAOU utilized the POC method of accounting, and there is no allegation that DAOU "corrected"

20  its previous application or otherwise modified the manner by which it applied that accounting

21  method after October, 1999.  Indeed, DAOU still recognizes revenue with the POC method.

22  Since the application of the POC method remained uniform throughout the Class Period, and

23  DAOU has not changed the way it applies that method to date, the Statement in the Prospectus

24  cannot possibly be the cause of the stock "inflation."  And whatever may have wrung the

25  "inflation" out of DAOU's stock price at the end of the Class Period, it is clear that such

26  "inflation" had nothing to do with the Company's use of POC method, which continues unabated

27  today.

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

14

### 5. There Are No Other Material Misstatements Or Omissions.

Other than with respect to the POC method, one cannot tell what other statements in the Amended Complaint are claimed to be misstatements, or *why* those statements are incorrect. Many of the other allegations simply assert that financial reports or forecasts were incorrect because DAOU was using the POC method to prop up its earnings. These other statements attributed to the Defendants fall into roughly three categories:

**Analysts' Projections.** Forward-looking statements allegedly were published by market analysts, but the Plaintiffs must show that the Defendants put their "imprimatur, express or implied, on the projections." *In Re Stac Elect. Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996), *citing In Re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1486 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993). "For example, a defendant is sufficiently entangled [without a statement] when he has reviewed the analysts' forecasts, and by his activity, made an implied representation that the information is true or at least in accordance with the company's views." *Wenger*, at 1249, *citing In re Caere Corp. Sec. Litig.*, 837 F. Supp. 1054, 1059 (N.D. Cal. 1993).

> Merely providing analysts with historical information and correcting factual inaccuracies is not sufficient. . . . The pleading should (1) identify the specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which allegedly gave rise to the entanglement; and (3) state the dates on which the acts allegedly gave rise to the entanglement occurred.

*Wenger*, at 1249. (citations omitted.) Here, the Plaintiffs fail to allege specific facts that any of the Defendants approved of the analysts' reports before they were issued. Nor have the Plaintiffs alleged that the Defendants interacted, let alone entangled themselves in the preparation of the analysts' work product. *See id.* Accordingly, any Section 10(b) claim based on analyst reports should be dismissed.

**Forecasts.** The vast majority of statements by the Defendants recited in the Amended Complaint are oral, forward-looking statements, made to analysts in conference calls concerning DAOU's future plans, objectives and business prospects. 15 U.S.C. §§ §78u-5(I)(1)(A), 78u-

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1  5(I)(1)(C), 78u-6(b)(I) (forward-looking statements include "plans and objectives of

2  management, future economic performance, or projection of revenues.") Each of those statement

3  was preceded by meaningful cautionary language, and accordingly, the Reform Act's "safe

4  harbor" provision eliminates liability. *See In re Stratosphere*, 1 F. Supp. 2d at 1106.

5      The Amended Complaint conveniently omits the meaningful cautionary language that was

6  included within every conference call, but by incorporating citations to portions of those

7  conference calls into the pleading, the Plaintiffs must allow the Court to examine the statements

8  attributed to the Defendants in context. *See Wenger*, at 1241-43. In every conference call

9  DAOU conducted with analysts, DAOU expressly identified its statements as forward-looking

10  and disclosed the following meaningful cautionary language as required by the Reform Act:

11          Except for the historical information contained herein the matters discussed
            in this teleconference are forward looking statements that involve numerous
12          risks and uncertainties. The Company's actual results could differ
            materially from those projected in such forward looking statements and will
13          depend upon a number of factors, including those discussed in this
            teleconference and prior SEC filings, press releases and other public filings
14          of the Company.

15  (Transcripts of Conference Calls Held During the Class Period, Exhibits 4 through 10 to

16  accompanying Notice of Lodgment.) The existence of such cautionary language mandates

17  dismissal of the Plaintiffs' claims. *See* 15 U.S.C. §§ 78u-4(b)(2); 78u-5(c)(1)(B)(i). *See also*

18  *Wenger*, 2 F.Supp.2d at 1241-42 (as a matter of law, the Reform Act's safe harbor applies to the

19  following warning given at the beginning of the conference call: "The following discussion

20  contains forward looking statements, and our actual results may differ materially from those

21  discussed here [and in the 10k]".)

22      The Plaintiffs also must satisfy the Reform Act's requirement of alleging "specific facts

23  demonstrating that … the defendant consciously misled the public" when making such forward-

24  looking statements. *In re Stratosphere, 1F. Supp. 2d at 1106.* Here, the Plaintiffs baldly allege

25  that the Defendants knew the forward-looking statements were false when made without alleging

26  facts with the requisite specificity which demonstrate actual knowledge of the falsity.

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

16
POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

**Miscellaneous Statements.** The Amended Complaint recites several statements made during conference calls with analysts, but it does not specifically state that any one or all of these constitutes a material misstatement. The Defendants' generalized statements cannot support liability in any event. For example, the Plaintiffs quote Georges Daou as saying, "We are pleased with the progress we've made in implementing our 1997 corporate growth strategy." (Amended Complaint, ¶ 31.) The Amended Complaint also attributes Defendants with having said that "DAOU saw significant increases in new business on all fronts with excellent visibility going forward." (Amended Complaint, ¶ 32.) These types of vague or amorphous statements cannot serve as a basis for liability. *See In re Syntex Corp.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996); *Strassman v. Fresh Choice, Inc.*, 1995 U.S. Dist. LEXIS 19343 (N.D. Cal. Dec. 7, 1995); *Raab v. General Physics Corp.*, 4 F.3d 286, 288-90 (4th Cir. 1993).

### 6. There Is No Control Person Or Seller Liability.

The Plaintiffs seek to hold the individual Defendants (except Mr. Moragne) liable under Section 20(a) of the Act of 1934 Act, which provides a cause of action against a "control person." Because the Plaintiffs have not sufficiently alleged a violation of Section 10(b), there can be no Section 20(a) liability. *See In re Verifone Sec. Litig.*, 784 F.Supp. 1471, 1488 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865, 872 (9th Cir. 1993). Similarly, because the Plaintiffs have not sufficiently alleged that a primary securities law was violated under Section 11, their claims for Section 15 control person and Section 12(2) seller liability fail. *See Cooperman v. Individual, Inc.,* 1999 U.S. App. LEXIS 4838, at *26 (1st Cir. Mar. 22, 1999) (Section 15); *In re WRT Securities Litigation,* 1997 U.S. Dist. LEXIS 14009, at *17 - *22 (S.D.N.Y. Sept. 15, 1997) (Section 12(2)); *Argypoulos v. Mednet,* 1997 U.S. Dist. LEXIS 10497, at *17 (C.D. Cal. Apr. 18, 1997) (Section 12(2)). Accordingly, the Plaintiffs' claims for control person and seller liability fail and should be dismissed.

A Section 12(2) claim only may be brought against a person who "offers or sells" stock to the Plaintiffs. *See* 15 U.S.C. § 77*l*(a)(2); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1214-15

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

17

1  (1st Cir. 1996). The Plaintiffs have not alleged facts showing that the Defendants were Section

2  12(2) sellers. They allege only that the Defendants drafted and signed the Registration Statement

3  and Prospectus for DAOU's February 1997 IPO, and were "a substantial factor" in the sale of

4  that stock. (Amended Complaint, ¶ 128.) These allegations are patently insufficient to state a

5  claim under Section 12 (2). *See Shaw,* 82 F.3d at 1214-16 (allegations that defendants prepared

6  and signed the prospectus and registration statement, and were a "cause" of the sale held

7  insufficient); *Pinter v. Dahl,* 486 U.S. 622, 654, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)

8  (alleging that defendants were a "substantial factor" of the sale held insufficient under Section

9  12(1)); *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 535-36 (9th Cir. 1989) (*Pinter*

10  applies to Section 12(2) claims). Thus, because the Plaintiffs cannot plead facts showing that any

11  of the Defendants were sellers, the Section 12(2) claim must be dismissed.

12                          **IV. CONCLUSION**

13         A securities fraud case must be constructed upon specific facts giving rise to a strong

14  inference of some wrongdoing that is causally linked to investor losses. But here we have little

15  more than a decline in the stock market price thrown into caldron with disjointed facts,

16  unsupported conclusions, innuendo and speculation. The Plaintiffs present all of this in a maze-

17  like complaint that leaves a reader with the impossible task of trying to figure it out in order to

18  answer.

19         The Plaintiffs' failure to plead facts that specifically show *how* DAOU's accounting

20  judgments violated GAAP and *how* reported revenue would have been different in any material

21  amount is a fatal defect. Further, there is no coherent, logical allegation of facts demonstrating

22  loss causation.

23         The Plaintiffs should go back to the drawing board. If they have facts, let those facts

24  showing a material misstatement be pleaded with specificity. If they have no facts, let us be done

25  with this litigation. For now, the Defendants quite properly ask, "So What?"

26

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

503689v1

18

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

1    The Amended Complaint should be dismissed.

2    Dated:  April 12, 1999                              **BAKER & McKENZIE**

3

4                                                        By:_____

5                                                            CHARLES H. DICK, JR.

6                                                        Attorneys for the Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
(619) 236-1441

19
POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
98CV1537-TW(CGA)

503689v1